UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ZAMEER R. AZAM,

    Plaintiff,

v.

RICK HILL, et al.,

    Defendants.

Case No. 10-cv-03900-EJD

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Re: Dkt. No. 1

Petitioner Zameer Azam, represented by counsel, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction from Alameda County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

**PROCEDURAL HISTORY**

On March 8, 2004, an amended information was filed, charging Petitioner with kidnapping, inflicting corporal injury on a cohabitant, making criminal threats, inducing false testimony by force or fear, and disobeying domestic relations and other court orders. CT 196–205. The presentation of evidence before a jury lasted several days, from opening on September 8, 2004 to closing on September 16, 2004. CT 291, 334. Jury deliberations commenced on September 16, 2004. CT 334. On September 29, 2004, the jury found Petitioner guilty of kidnapping, inflicting corporal injury on a cohabitant, making criminal threats, and disobeying a written court order. CT 348–67. The jury also found Petitioner guilty of the lesser included

offense of attempting to induce false testimony but acquitted of the allegation that he personally used a knife. Id. The state trial court sentenced Petitioner to a term of twelve years in state prison. CT 424–28.

On June 28, 2006, the state appellate court affirmed the judgment. Resp. Ex. 6. On October 11, 2006, the California Supreme Court denied review without prejudice to reconsideration after the U.S. Supreme Court decided Cunningham v. California. Resp. Ex. 8. After the U.S. Supreme Court issued its decision in Cunningham on January 22, 2007, the Court on February 26, 2007 granted certiorari in Petitioner's case, vacated the judgment, and remanded for further consideration. Azam v. California, 549 U.S. 1249 (2007).

On remand from the U.S. Supreme Court, the state appellate court vacated Petitioner's sentence on July 13, 2007. Resp. Ex. 11. However, an intervening ruling from the California Supreme Court confirmed that the state appellate court had reached the wrong result. Accordingly, on July 31, 2007, the state appellate court granted rehearing and affirmed the judgment of the trial court. Resp. Ex. 12. On August 27, 2008, the California Supreme Court denied review. Resp. Ex. 13. The U.S. Supreme Court denied certiorari on January 26, 2009. Azam v. California, 555 U.S. 1157 (2009).

On December 23, 2009, Petitioner filed a pro per petition for a writ of habeas corpus in the California Supreme Court. Dkt. No. 14 Ex. 7. On August 11, 2010, the petition was denied. Dkt. No. 14 Ex. 8.

Petitioner filed the instant pro per petition for a writ of habeas corpus on August 31, 2010. Dkt. No. 1. On March 9, 2012, this Court dismissed the petition as untimely and found that three of the eight asserted claims were procedurally defaulted. Dkt. No. 18. The Ninth Circuit granted a certificate of appealability on the timeliness issue and reversed on the ground that Petitioner was entitled to equitable tolling under a recently decided case. Azam v. Hill, 583 F. App'x 682 (9th Cir. 2014). Therefore, the only claims before this Court are the five non-defaulted claims presented in Petitioner's August 31, 2010 habeas petition. Dkt. No. 27 at 2.

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY
2

# DISCUSSION

A. Factual Background

The California Court of Appeal summarized the facts as follows:

*Facts*

Defendant and his victim [Jennifer Bascom] both lived in Alameda County, and met and started dating in November 2000. Shortly thereafter the victim became pregnant with defendant's child. When she was five months pregnant, defendant first displayed violent behavior when he punched her in the stomach, and told her he wanted to end the pregnancy. Other acts of violence followed, when defendant became angry and grabbed the victim by the throat, and in January 2002, he pushed her into a wall, and told her "he wanted to put [her] head through the kitchen window." The victim obtained a restraining order, but later resumed contact with defendant because she "loved him very much, and . . . thought that it would never happen again every time." Once, when the victim arrived to pick up their daughter at defendant's family home, he ripped her shirt and slammed her head against the wall during an argument. He also directed her to put their child down so that he could "beat the shit out of [her]," as "he would need a good reason . . . to go back to jail." The victim obtained another restraining order, and again reconciled with defendant.

On August 26, 2003, during a thunder and lightning storm, defendant came to the victim's home in the middle of the night. Because he felt she delayed answering the door, he slammed her head against the wall, pulled her up the stairs by her hair, and hit her on the head, causing her vision to blur. The victim tried to call the police, but defendant broke down the bedroom door and punched and choked the victim, while she held their small child and her crying six-year-old son sat next to her. Defendant told the victim that only he and their daughter would leave the apartment, and everyone else would die.

The victim went limp while defendant was choking her, and he became concerned, brought her water, and later took her to the hospital at her request. At the hospital, defendant told the victim to tell the truth about what happened, but also said he wasn't going back to jail. The victim first told the hospital staff she had fallen, but after defendant left the room she explained what happened and made a police report. Photographs of her injuries and the damage to her room corroborated her story.

The victim stayed with her mother following this incident, and defendant called her repeatedly to urge her to change her story about what happened on August 26 so that he wouldn't have to go back to jail. On August 30, the victim was to take defendant to visit his grandparents, but she delayed leaving her apartment that

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

3

morning because she didn't want to bring her son. He was afraid of defendant, and she was waiting for her mother to return home to care for him. Defendant was angry when the victim was late, and became more enraged as she drove him to his grandparents' home. He threatened to kill her and told her he wanted to put her head through the windshield. Several times during that day defendant repeatedly suggested to the victim that she should change her story about the events of August 26 so the charges against him would be dropped. After she left defendant at the end of the day, the victim went to the hospital and gave a statement to the police.

After a month out of state at her father's, the victim returned for defendant's preliminary hearing arising out of the events of August 26 and 30, and was again contacted by defendant. As a result of their conversations, she declined to testify because she felt some of the charges regarding defendant's August 30 conduct were unfair. Defendant was released from custody, and the victim agreed to live with him. Things soon deteriorated, as defendant was using crystal methamphetamine on a daily basis and becoming very paranoid. He was obsessed with the events of August 30, and forced the victim to go through the police reports "night after night, word for word." He kept the reports in a briefcase he handcuffed to his wrist.

On the evening of November 1, defendant became angry about an e-mail the victim recently sent to a friend. Defendant hit the victim on both sides of the head and in the face because he was convinced that she was cheating on him. He grabbed her by the neck and threw her over a room divider, then pulled her by her hair into his bedroom, where he punched and slapped her in the face and kicked her legs. He followed her into the bathroom and pushed her into the glass shower door that shattered in pieces. He continued to punch and slap her, and at one point took out a knife and told her how easy it would be to kill her. The victim offered him money and asked what he wanted. He responded: "Your life."

When defendant let go of her, the victim ran out the front door and across the street, pounded on a neighbor's door, and screamed for help. Defendant came up behind her, told her to shut up, and grabbed her by the hair. When defendant began to run back to his house, the victim fell and was dragged across the street, a distance of approximately 38 feet. A neighbor was alerted by the victim's son and called the police. When police arrived, defendant released the victim and ran back into the house. The victim was treated at the hospital, where her injuries were photographed. Photos taken a few days thereafter showed additional bruising and "road rash" on the victim's back. An investigating officer visited defendant's home the day following the incident, and noticed that glass was missing from the shower door. Broken glass was found in a garbage can in the garage.

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

4

A friend of the victim testified that defendant did not want the victim to have his child. She had seen him push the victim and grab her by the throat. When she talked to the victim over the phone on August 30, she sounded nervous and she could hear the victim's daughter crying. Defendant spoke to the victim's friend over the phone, and told her he didn't care if he went back to jail, and that he would kill her and as many people as he could.

A police officer who was qualified as a domestic violence expert explained that threats of violence can be used to maintain control over a victim, and that acts of violence are part of the pattern of abuse, not the result of a batterer's loss of control. Drugs do not cause domestic violence, it is a learned behavior, and it is common for an abuser to blame the victim and accuse her of being unfaithful.

*Defendant's Testimony*

Defendant testified in his own defense, against the advice of his attorney. He was asked when he started dating the victim. Defendant responded: "You know, I can't really say it was ever a dating relationship. I mean we'd sleep together every once in a while, and we wouldn't see each other for a while, and we'd sleep together again. During that whole relationship, I've had other girlfriends the whole time." Defendant testified that he was upset when he found the victim's picture on a call girl website, and drove to her apartment on the night of August 26, 2003, even though she asked him not to come over. He became very angry when she did not promptly answer the door, and admitted doing "Everything just like [the victim] said." But he did not mean he intended to kill the victim when he told her only he and his daughter were leaving the apartment. He only intended to take their daughter away from her.

A few days later, defendant told the victim he planned to move to Las Vegas to live with his aunt. She asked that he not do so, and they made plans for the victim to drive defendant to visit his grandparents on August 30. Defendant again became very angry when she was late to pick him up for the trip to his grandparents, and said something stupid like "I'm going to put my hand through the windshield I'm so mad." He also admitted it was his idea to tell authorities that a masked intruder had assaulted the victim on August 26.

On November 1, defendant checked his computer and became angry when he saw that the victim had visited a perjury website. He admitted hitting and throwing the victim, but thought he had pulled her only five to ten feet into the street. He also admitted calling and writing to the victim from jail, despite a court order forbidding him to contact her.

Resp. Ex. 6 at 1–6 (some alterations in original) (footnotes omitted).

B. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings (as opposed to the dicta) of the U.S. Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be consulted to determine whether the circuit "has already held that the particular point in issue is clearly established by U.S. Supreme Court precedent," circuit precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the U.S. Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

6

the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Instead, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion and "presume[s] that the unexplained decision adopted the same reasoning." See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The U.S. Supreme Court has vigorously and repeatedly affirmed that under § 2254, there is a heightened level of deference a federal habeas court must give to state court decisions. See Dunn v. Madison, 138 S. Ct. 9, 12 (2017) (per curiam); Kernan v. Cuero, 138 S. Ct. 4, 9 (2017) (per curiam); Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017); White v. Wheeler, 136 S. Ct. 456, 461 (2015); Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). As the U.S. Supreme Court has explained, on federal habeas review, § 2254 "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam) (quoting Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (internal quotation marks omitted)). With these principles in mind regarding the standard and limited scope of review in federal habeas proceedings, the Court addresses Petitioner's claims.

C.  Claims and Analysis

Petitioner raises the following grounds for federal habeas relief: (1) the prosecution presented insufficient evidence to support Petitioner's conviction for kidnapping; (2) the trial court improperly denied Petitioner his right to represent himself; (3) the trial court unreasonably determined that Petitioner did not present adequate evidence to warrant a trial on his insanity

defense; and (4) Petitioner was denied due process based on the cumulative prejudice resulting from these errors.[1] Each claim is analyzed in turn below.

1. <u>Sufficiency of the evidence</u>

Petitioner's first claim is that there was insufficient evidence to support his conviction for kidnapping. Dkt. No. 1-3 at 2–7. In particular, Petitioner contends that the short movement of Ms. Bascom does not constitute kidnapping. <u>Id.</u> at 3. The California Court of Appeal rejected Petitioner's claim, explaining:

> Defendant argues his kidnapping conviction must be reversed for insufficiency of the evidence, because the distance he moved the victim was not "substantial in character." We must determine whether the record discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. We review the record in the light most favorable to the judgment and presume in its support the existence of every fact the trier could reasonably have deduced from the evidence.
>
> Defendant relies on <u>People v. Martinez</u> (1999) 20 Cal. 4th 225 (<u>Martinez</u>). In that case, the defendant took the victim through her house and across the backyard. They were approximately 40 to 50 feet from the back of the residence when they were spotted by the police. The court concluded the movement would not have been sufficient to support a conviction for "simple" kidnapping under prior case law, which focused solely on the distance moved.
>
> But the California Supreme Court went on to clarify the asportation standard in a simple kidnapping case, by holding that while "the movement must be 'substantial in character,' . . . the trier of fact may consider more than actual distance." To determine whether a kidnapping occurred "the jury should consider the totality of the circumstances," including "not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." "'The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased.'"

---

[1] Although Petitioner's habeas petition presents an additional challenge to his sentence, Petitioner "concedes that his constitutional challenge to his sentence is moot." Traverse at 1 n.1; <u>see</u> <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998) ("Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration . . . must exist if the suit is to be maintained.").

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

8

> The Martinez court's explanation of the "substantial distance" requirement "effectively overruled cases holding that specific distances failed to establish asportation." The court also "emphasize[d] that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance," and held that "in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality."
>
> Defendant claims when one considers "all of the contextual circumstances" in this case coupled with "the short distance of the movement involved herein, there was no kidnapping." But the jury disagreed, and their decision is supported by substantial evidence. The victim escaped from the home where defendant was assaulting her, and fled across the street to seek help. Defendant pursued her and dragged her by her hair back across the street, a distance of approximately 38 feet. Defendant's conduct prevented the victim from being rescued and placed her at a greater risk of harm. He was seeking by force to return her to the privacy of the home.
>
> The evidence is that defendant forcibly moved the victim from a place she was seeking refuge, toward isolation away from public view, and further injured her in the process. (See People v. Bradley, 15 Cal. App. 4th at 1154 [movement of victim from open street to enclosed dumpster area, a distance of 50 to 60 feet, increased danger to victim and was sufficient to show asportation]; People v. Smith (1995) 33 Cal. App. 4th 1586, 1594–95 [movement of victim 40 to 50 feet along driveway from street to camper parked behind house was sufficient under section 207]; People v. Stender, 47 Cal. App. 3d at 423 [200 foot distance became more substantial when "it accomplished the purpose of removing the victim from the ready help of her mother"]; see also People v. Salazar (1995) 33 Cal. App. 4th 341, 344, 348 [movement of victim from exterior walkway of motel to interior bathroom, a total distance of 29 feet, substantially increased risk of harm to victim and enhanced defendant's opportunity to perpetrate additional crimes, supporting conviction for kidnapping with intent to rape].)
>
> The jury was not legally required to find that defendant's forcible movement of the victim was merely incidental to his previous physical assault. He pursued her out of the home, after she escaped from his control and entered upon a neighbor's property to seek aid. The jury had reason to conclude defendant dragged the victim back across the street towards the privacy of the home to prevent her from obtaining aid or exposing his conduct.

Resp. Ex. 6 at 7–11 (alterations in original) (footnotes omitted) (some citations omitted).

Evidence is constitutionally sufficient to support a conviction when, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). The reviewing court presumes that the trier of fact resolved any factual conflicts in the record in favor of the prosecution and defers to that resolution. Jackson, 443 U.S. at 326. The U.S. Supreme Court has "made clear that [sufficiency-of-the-evidence] claims face a high bar in federal habeas proceedings." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).

Here, Petitioner contends that there was insufficient evidence for the jury to conclude that the victim's movement was "substantial in character," as required to sustain a conviction for kidnapping under California law. People v. Martinez, 973 P.2d 512, 519 (Cal. 1999) (quoting People v. Stanworth, 522 P.2d 1058, 1068 (Cal. 1974)). As the California Court of Appeal noted, the California Supreme Court has dispensed with the notion that some particular distance is necessary: the trier of fact should examine the "totality of the circumstances," including "not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." Id. at 520.

Based on those factors, the Court of Appeal was not objectively unreasonable in its determination that a rational trier of fact could have found beyond a reasonable doubt that Ms. Bascom's movement was substantial in character. The jury could have credited Ms. Bascom's testimony that she was dragged by her hair for approximately 38 feet. RT 322. Photographic evidence also showed that Ms. Bascom had bruises and abrasions on her back from being dragged for this distance. And the jury could also reasonably conclude that Petitioner's act of dragging

Ms. Bascom both thwarted her attempt to secure aid from the neighbors after escaping Petitioner's assault and increased the risk of further harm by seeking to force her away from public view. See RT 322–23. Petitioner invokes the California Supreme Court's holding that "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." Martinez, 973 P.2d at 520. But Petitioner does not point to any California case law establishing that 38 feet is a "very short distance," and the Court of Appeal identified cases upholding kidnapping convictions where the distance moved was comparable. See Resp. Ex. 6 at 9 (citing cases where victim was moved somewhere between 29 and 200 feet). In these circumstances, the Court of Appeal's decision as to the sufficiency of the evidence was not objectively unreasonable, and Petitioner is not entitled to habeas relief on this claim.

2. Right of self-representation

Petitioner's second claim is that the trial court violated his Sixth and Fourteenth Amendment rights by denying his request to represent himself. Dkt. No. 1-3 at 9–15. The California Court of Appeal rejected Petitioner's claim, explaining:

> Defendant contends the trial court erred when it denied his request for self-representation, made on the third day of trial during jury voir dire. When the court initially indicated it was ready to grant defendant's request, defendant asked for "a continuance for a few days so I can prepare [for] this." The court responded: "I'm not going to continue this case. That would be grounds for denying your motion to proceed in pro per. If you want to proceed to represent yourself, we're going now, sir." When defendant reiterated his request for a continuance, the court informed him: "We are in the middle of jury selection. I've drug these people through a week and a half of stuff. . . . I have 50 people waiting." When defendant indicated he was not then prepared to proceed, the court denied his petition to represent himself.
>
> A trial court must grant a defendant's request for self-representation "if the defendant knowingly and intelligently makes an unequivocal and timely request after having been apprised of its dangers." Such a motion may be considered untimely when made on the eve of trial, and is then left to the trial court's discretion. Defendant relies on Armant v. Marquez (9th Cir. 1985) 772 F.2d 552, 555, that applied a federal rule that a request for self-representation is timely if made before a jury has been impaneled. But as defendant acknowledges, the

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

11

> California Supreme Court has rejected the federal rule, finding it "'too rigid in circumscribing the discretion of the trial court.'"
>
> When the trial court exercises its discretion to rule on an untimely motion for self-representation, it should consider "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." The record here reflects that defendant "had a proclivity for trying to substitute counsel [and made several previous Marsden motions]," as a result of which "the trial court was aware of the quality of defense counsel's representation." Defendant's request was made during trial, on the third day of jury voir dire, and immediately after a Marsden motion was denied. Defendant also "asked for a continuance, which would definitely have delayed the upcoming trial." Under the circumstances, the trial court's denial of defendant's motion for self-representation was not an abuse of discretion.

Resp. Ex. 6 at 11–13 (alterations in original) (footnotes omitted) (some citations omitted).

The U.S. Supreme Court has held that the Sixth Amendment, incorporated against the States through the Fourteenth Amendment, "implies a right of self-representation." Faretta v. California, 422 U.S. 806, 821 (1975). To exercise this right, a defendant "must voluntarily and intelligently elect to conduct his own defense, and most courts require him to do so in a timely manner." Martinez v. Court of Appeal of Cal., 528 U.S. 152, 161–62 (2000). "Because the [U.S.] Supreme Court has not clearly established when a Faretta request is untimely, other courts are free to do so as long as their standards comport with the [U.S.] Supreme Court's holding that a request 'weeks before trial' is timely." Marshall v. Taylor, 395 F.3d 1058, 1061 (9th Cir. 2005); see also Shaw v. Grounds, 586 F. App'x 346, 347 (9th Cir. 2014) ("[T]he [U.S.] Supreme Court has never made a determination regarding the proper timing of a defendant's motion to represent himself."). The California Supreme Court has held that a Faretta request must be made within a reasonable time before trial. People v. Windham, 560 P.2d 1187, 1191 (Cal. 1977).

Petitioner "does not dispute" that California's reasonable-time-before-trial rule "conforms [to] clearly established federal law." Traverse at 8. The California Court of Appeal applied that rule in this case to find Petitioner's request, made on the third day of jury selection, untimely. Petitioner's request was not made "weeks before trial," the only timing element mentioned by the

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

12

U.S. Supreme Court in Faretta. See 422 U.S. at 835. Accordingly, the Court of Appeal's finding of untimeliness clearly comports with Supreme Court precedent. This Court is not at liberty to substitute its own judgment for the judgment of the Court of Appeal on the application of the reasonable-time-before-trial rule. In fact, the Ninth Circuit has rejected habeas relief in nearly identical situations. See, e.g., Stenson v. Lambert, 504 F.3d 873, 884 (9th Cir. 2007) (upholding state court's determination that Faretta request made on the day before voir dire ended was untimely); Marshall, 395 F.3d at 1061–62 (upholding state court's determination that Faretta request made on the morning of trial was untimely).

Petitioner contends that the Court of Appeal's decision rested on an unreasonable determination of the facts because "the record shows that the trial court *granted* [Petitioner's] request to represent himself, then denied his request for a continuance." Traverse at 8. But that reading of the facts is untenable. The trial judge inquired whether Petitioner wished to represent himself and commented that the decision to forgo counsel would be "very foolish" but acknowledged that Petitioner had a "right to do so." RT 260. However, when Petitioner asked for more time to prepare, the trial judge explained that "[t]hat would be a ground for denying [the] motion to proceed in pro per" and that, if Petitioner was not ready to proceed, then the court would not "allow [Petitioner] to represent [himself]." Id. Because Petitioner said that he was not ready to go forward, the trial court "denied" his "petition to represent [himself]." RT 261. As the Court of Appeal put it, these facts clearly demonstrate that "the [trial] court initially indicated it was ready to grant [Petitioner]'s request" but "denied his petition to represent himself" when he "indicated he was not then prepared to proceed." Resp. Ex. 6 at 11–12. Petitioner has not shown that the Court of Appeal's decision involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

3. Insanity phase

Petitioner's third claim is that he was deprived of his Sixth and Fourteenth Amendment rights to present a complete defense when the trial court ruled that he had not presented enough

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

13

evidence to warrant a trial on insanity. Dkt. No. 1-3 at 23–26. The California Court of Appeal rejected Petitioner's claim, explaining:

> Defendant contends the evidence was sufficient to merit a sanity phase trial on his [insanity] pleas. Under such a plea, it was defendant's burden to prove insanity at the time of the offense. When a defendant fails to present evidence sufficient to support an [insanity] plea, the court has inherent authority to direct a verdict in favor of the prosecution.
>
> Before the hearing on the sanity phase of defendant's trial, the court reviewed two evaluations that concluded defendant was legally sane and did not suffer from any mental illness. Defendant made an offer of proof "that he didn't understand the nature and quality of his acts and that he couldn't distinguish right from wrong on November 1st," and that during the preceding six-week period "he was experiencing what he would describe as tremendous anxiety, tremendous feelings of paranoia" and "was often under the influence of the methamphetamine that he had consumed." The court determined there was insufficient evidence to proceed with the [insanity] phase because "no qualified expert testimony . . . has been offered, and voluntary intoxication is a specific bar to such a defense."
>
> The trial court was correct. No competent evidence supported defendant's claim of insanity. Both experts found defendant sane at the time of his offenses, and defendant's drug use was insufficient to support an insanity defense. . . . Nor was defendant denied a fair trial by brief comments by the court during the guilt phase that alluded to a later phase of trial.

Resp. Ex. 6 at 21–23 (some alterations in original) (footnotes omitted) (citations omitted).

As relevant here, two general propositions have long been established under the Due Process Clause. First, the prosecution must prove beyond a reasonable doubt all elements of the charged crime. In re Winship, 397 U.S. 358, 364 (1970). Second, criminal defendants must "be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). Nevertheless, consistent with those two principles, a State may allocate to the defendant the burden of proving the affirmative defense of insanity. See Patterson v. New York, 432 U.S. 197, 204–06 (1977). California has availed itself of that opportunity, concluding that a judge may "remove the issue of sanity from the jury when the defendant has failed to present evidence sufficient to support the special plea [of insanity]." People v. Ceja, 131 Cal. Rptr. 2d 601, 614 (Ct. App. 2003).

Case No.: 10-cv-03900-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

14

Petitioner agrees that California does not run afoul of the Due Process Clause by designating insanity as an affirmative defense and permitting a directed verdict where the defendant has not presented adequate evidence in support of an insanity plea. Traverse at 13–14. Instead, Petitioner asserts that "[he] *did* present sufficient evidence to necessitate a sanity phase trial." Id. at 14. It is not clear what role Petitioner asks this Court to play in examining the California Court of Appeal's state-law conclusion that Petitioner's insanity evidence was insufficient. In the related context where a federal habeas court reviews a state-law challenge to a jury instruction, the Ninth Circuit has observed that where a state court decision is based on a careful application of "state law principles and factually similar state cases," the state court's determination generally "should be the final word on the subject." Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). It would appear that Petitioner is not entitled to habeas relief because he fails to identify any Supreme Court authority finding a due process violation in similar circumstances to those presented in his case.

In any event, the Court of Appeal reasonably concluded that Petitioner failed to present adequate evidence to justify holding a trial on insanity. Petitioner's offer of proof indicated that he would testify that "he didn't understand the nature and quality of his acts and that he couldn't distinguish right from wrong" and that "he was experiencing what he would describe as tremendous anxiety, tremendous feelings of paranoia." RT 816–17. As both the trial court and Court of Appeal explained, however, Petitioner was not qualified to testify as to whether he satisfied the legal test of insanity, and two mental health experts had already concluded that Petitioner was legally sane at time he committed the offenses. RT 818; Resp. Ex. 6 at 22. Petitioner also cites to his trial testimony that he was "so completely out of [his] mind" that he did not know what he was doing and Ms. Bascom's trial testimony that Petitioner exhibited bizarre behavior that progressively worsened over the weeks prior to the offenses. RT 392, 622. Again, not only were these witnesses unqualified to testify as to the ultimate legal issue of insanity, but neither rebuts the conclusions of the two experts.

Additionally, Petitioner seeks to rely on evidence of his drug use. For example, Petitioner proffered to testify that "he was consuming methamphetamine and in that time frame was often under the influence of the methamphetamine that he had consumed," including on the day of the offenses. RT 818. But the California penal section referenced by the trial court and California Court of Appeal provides that the defense of insanity "shall not be found by the trier of fact solely on the basis of . . . an addiction to, or abuse of, intoxicating substances." Cal. Penal Code § 29.8. Petitioner lastly points to one of the expert's statements that Petitioner's "spiraling involvement with methamphetamine" had caused Petitioner to "inhabit an increasingly paranoid and basically disjointed world view (possibly living, for example, in a parallel dimension)." CT 385. The Court of Appeal, however, could reasonably have determined that Petitioner's paranoid behavior did not equate to legal insanity—namely, an inability to understand the nature and quality of his actions or distinguish right from wrong. Indeed, that determination is supported by the same expert's ultimate conclusion that Petitioner "was able to understand the significance of his actions, as well as to recognize that his actions entailed grave consequences and that they were wrong." CT 386–87 (emphasis omitted). Thus, Petitioner is not entitled to habeas relief on this claim.

### 4. Cumulative error

Petitioner's fourth, and final, claim is that the cumulative effect of the above-identified errors resulted in a denial of due process. Dkt. No. 1-3 at 46–47. The California Court of Appeal rejected Petitioner's claim, explaining:

> We also reject defendant's argument that the cumulative effect of the alleged errors resulted in an unfair trial. (See People v. Price (1991) 1 Cal. 4th 324, 465 [where few or no errors occurred, and any error was harmless, their cumulative effect does not result in the substantial prejudice that compels reversal of a conviction]; People v. Kronemyer (1987) 189 Cal. App. 3d 314, 349 [cumulative error claim requires showing of reasonable probability the jury would have reached a result more favorable to defendant in the absence of the alleged errors].)

Resp. Ex. 6 at 23.

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298, 302–03 (1973)). The standard is the narrow one of due process: "cumulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

As the California Court of Appeal described, "where few or no errors occurred, and any error was harmless, their cumulative effect does not result in the substantial prejudice that compels reversal of a conviction." Resp. Ex. 6 at 23. Petitioner has not shown that any error occurred, let alone an error of constitutional magnitude in violation of clearly established federal law. Apart from pointing to the same violations already addressed, Petitioner makes no separate argument for how the combined effect of the alleged errors had the requisite substantial and injurious effect on the jury's verdict. Traverse at 16. Accordingly, Petitioner is not entitled to habeas relief on his cumulative-error claim because the Court of Appeal reasonably concluded that the trial was not so infected with unfairness as to violate due process.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus is **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: May 21, 2018

EDWARD J. DAVILA
United States District Judge